Gkeen, J.
delivered the opinion of the court.
In this case the plaintiff and defendant both claim under a grant from North Carolina to Thomas Clark for seven thousand two hundred acres, dated 15th September, 1787, and a deed from Tazewell Mitchell to William New for four hundred and ten acres, dated 28th February, 1825. The plaintiff relies upon possession of the land in dispute by New for more than twenty years, thereby affording a presumption of the existence of a deed from Clark to Mitchell. The plaintiff proved the death of William New, and then read a bond executed by him to James and Thomas Walton for a title to the land in controversy, which had been proved and registered, and then read a deed of conveyance from the executors of William New, to wit, Sarah New and John T. New, to himself for the land described in the bond, dated 10th December, 1835, which was proved and registered in the county of Wilson the next day. The defendant also introduced and read a deed from Sarah New and John T. New, executors of William New, deceased, dated 23d February, 1836, which was proved and registered. The defendant also proved that one John Stewart had been in possession of the land in dispute, claiming it as his own, and that he had purchased from Stewart and held possession under him. The defendant introduced the record of a suit in chancery, wherein Stewart was complainant and the lessor of the plain *142 tiff, with others, was defendant, in which Stewart set up a claim tor the land m controversy against the lessor of the plaintiff; no decree was made in said cause, but it was dismissed by the court for want of prosecution. The defendant read in evidence articles of agreement between the lessor of plaintiff and Stewart, whereby the said suit was compromised, which is in the following words, viz:
“Articles of agreement made and entered into between John Stewart, of the county of Wilson and State of Tennessee, of the one part, and James Walton, of the county of Sumner and State aforesaid, witnesseth: Whereas, John Stewart filed a bill in the chancery court for the fourth circuit, at Franklin, against James Walton, Thomas Walton, Edward Bradley, William New, Everett Mitchell and Taze-well Mitchell, for a certain tract of land lying on Cedar creek, containing one hundred and ten acres, formerly the property of Seth P. Pool, and on which said Stewart now lives, and on which there has been a saw-mill, and the said Stewart and James Walton are the only persons concerned in said suit; and whereas, this our compromise hath this day taken place, which is to be of record, as soon as convenient, in the following manner, viz: the said John Stewart is to have full possession of all the land contained in said survey, as will more fully appear by the bond given to Seth P. Pool by William New, reserving to the said James Walton the one-half of the mill seat and the old materials of which said mill was built, and also the privilege of a small lot of ground on the point of the bluff above the spring to build a house on; and the said Stewart and Walton doth further agree to rebuild said mills jointly in the following manner: the old materials are to be used, and said Walton is to furnish two pair of mill-stones three feet and a half in diameter at his own expense, and all the expenses attending the said buildings are to be equal. In testimony whereof we have hereunto set our hands and seals this 3d November, 1827.
• .Tames Walton,. [Seal.]
John Stewart, [Seal.]”
The proof shows that the land in controversy had been sold by William New to Seth P. Pool, to whom he executed *143 a title bond. Pool assigned said bond to Edward Bradley. ° from whom Walton claims. Stewart alleged in his bill he had purchased the land from Pool, and that Bradley had been his security for the payment of the purchase money; and to secure him the title bond was assigned to him by Pool to be held in trust for Stewart. Both Stewart and Walton were in possession of part of the land at the date of the above articles of compromise. Among other things the court charged the jury, “that if this agreement was respecting the land sued for it gives the right of possession to Stewart; that Stewart could not be considered Walton’s tenant, but Stewart, by this written agreement with Walton, had a right of possession as against Walton during his life at least, and it was an interest or right which was not determined by Stewart’s moving off the lands, but it was an interest or right which he could sell; that although Walton had-no deed himself, and of course no legal title at the date of this agreement, yet the title he acquired afterwards inured to the benefit of Stewart and those coming in under him, and it would estop Walton from claiming the land except against those coming in adversely to Stewart.”
We think the court erred in the above direction to the jury in the construction which is given to the articles of compromise. Walton, in that agreement, does not purport to convey anything to Stewart. Nothing is said about the title of the land. Neither of them had the legal title, and both claimed to be entitled in equity, each having possession of part of the land; thus circumstanced, they say in the article that Stewart is to have full possession of all the land in controversy, reserving to Walton half the mill seat. Whether a court of chancery would construe these words, “full possession,” to be a relinquishment of all Walton’s claim to the land is a question we need not decide. They certainly do not convey anything to Stewart; and it is questionable whether they were intended to mean more than to settle the pending controversy, without affecting the rights of either party. At any rate this article of compromise does not purport, nor by any possible construction can it mean, a conveyance of an estate from Walton to Stewart; and consequent *144 fy when Walton afterwards was clothed with the legal title ° commenced this suit he was not estopped by this article oi compromise irom prosecuting it to judgment against Stewart or any one claiming under him.
The defendant’s counsel insists that the plaintiff does not show by the record that the title is in him, because he has not produced the will of William New to show that Sarah New and John T. New are his executors. The defendant introduced and read in evidence a deed from these same persons, as the executors of William New, and we think he has thus admitted they were such. The bond for a title to this land, executed to the Waltons by William New in his lifetime, was proved,and registered, and by the act of assembly the executors were authorized to make the conveyance. It is insisted by the plaintiff’s counsel that the article of compromise constitutes Steyvart a tenant of Walton, and that he is estopped from setting up an adverse possession against Walton, his landlord; and that Newsom, the defendant, having derived his possession from Stewart; is estopped in like manner. The principle here contended for would be true if Stewart had in fact been Walton’s tenant; but such he clearly was not before this article of compromise, and there is no expression used in the instrument that hints at an acknowledgment of Walton’s title. When it is said Stewart shall have full possession, Walton thus relinquishing his partial possession, we cannot infer that Stewart thereby agreed to hold such possession under Walton’s title. It is presumable that as he claimed title to the land himself when Walton relinquished to him “full possession,” he would hold possession by virtue of his own claim of title. We think, therefore, that this instrument does not constitute Stewart the tenant of Walton, nor does it convey to Stewart any estate from Walton; and hence neither party is estopped by it.
Let the judgment be reversed and the cause remanded for another trial.